## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TERESA D.,**[1] <br><br> **Plaintiff,** <br><br> **v.** <br><br> **FRANK BISIGNANO,**[2] <br> *Commissioner of Social Security,* <br><br> **Defendant.** | **Case No. 1:24-cv-02864 (GMH)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff Teresa D. brought this action seeking to reverse the final decision of the Commissioner of Social Security, Frank Bisignano ("Defendant" or "Commissioner"), affirming the denial of her application for period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405(g), and her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 405(g). She alleges that the Administrative Law Judge ("ALJ") erred in determining Plaintiff's residual functional capacity ("RFC") with respect to her mental limitations in concentration, persistence, and maintaining pace ("CPP"). More specifically, she argues that the ALJ did not properly account for Plaintiff's CPP limitations within Plaintiff's RFC by either including adequate additional limitations or sufficiently explaining how Plaintiff could sustain work despite her CPP limitations.

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf [https://perma.cc/N9T2-U5XG].

[2] Frank Bisignano, Commissioner of Social Security, is substituted for Martin O'Malley pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(d).

She seeks reversal of the Commissioner's decision and a judgment awarding her DIB and SSI benefits or, in the alternative, remanding the matter to the Commissioner for further administrative proceedings. The Commissioner takes the opposite position, arguing that the ALJ's decision is properly supported by the record and should be affirmed.[3]

Based on the parties' arguments and review of the record, Plaintiff's motion for judgment of reversal is denied and Defendant's motion for judgment of affirmance is granted.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

To be eligible for SSI and DIB benefits under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of a disability claim:

Step one: whether the claimant is engaging in "substantial gainful activity";[4]

Step two: whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

---

[3] The relevant docket entries for purposes of this Memorandum Opinion are: (1) the Administrative Record, ECF No. 4 through ECF No. 4-10; (2) Plaintiff's Motion for Judgment of Reversal, ECF No. 5; (3) Defendant's Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 9 and ECF No. 10; and (4) Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance and Reply to Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 15. The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "[i]nvolves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 416.910; *see also id.* § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims). "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." *Id.* § 416.920(a)(4)(i); *see also id.* § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching,

Step three: whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings");

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four: whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five: whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[7]

*See* 20 C.F.R. § 416.920; *see also id.* § 404.1520 (outlining the five-step sequential inquiry for DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.

---

carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922; *see also id.* § 404.1522 (defining a severe impairment for the purposes of DIB claims).

[6] "Past relevant work" is work "done within the past 15 years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1)(i) (amended 2024); *see also id.* § 404.1560(b)(1)(i) (amended 2024) (defining "past relevant work" for the purposes of DIB claims). If the claimant can perform his or her past relevant work, a finding of "not disabled" is required. *Id.* § 416.920(a)(4)(iv); *see also id.* § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims). On June 24, 2024, the definition of "past relevant work" changed to work "done within the past *five* years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it" and that was not "started and stopped it in fewer than 30 calendar days." *Id.*, § 416.960(b)(1) (emphasis added); *see id.*, § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims); 89 Fed. Reg. 27,653 (Apr. 18, 2024) (outlining amendment to definition of "past relevant work"); 89 Fed. Reg. 48,138 (Jun. 5, 2024) (deferring effective date of amendment to June 24, 2024). Because it was in effect at the time of the ALJ's decision, the fifteen-year lookback period applies in this matter. *See Gregory G. v. Bisignano*, No. 23-cv-2439, 2025 WL 1824842, at *13–15 (D.D.C. July 2, 2025).

[7] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. "The grids 'take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'" *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). However, when a claimant has additional limitations beyond those contemplated by the grids, the ALJ cannot rely on the grids alone to establish non-disability. *Id.* In such cases, the testimony of a vocational expert is generally required. *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

Affirmative answers to questions 3 or 5 establish disability." *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989) (citing 20 C.F.R. § 404.1520).

The claimant bears the burden of proof at the first four steps of the evaluation. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform. *Id.* In making this determination, an ALJ may call a vocational expert ("VE") to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[8] *Id.* at 90.

### B.    Plaintiff's Disability Claims and Procedural Posture

Plaintiff was born in 1972. ECF No. 4-7 at 2. On May 25, 2021, she filed a Title II application for period of disability and DIB, as well as a Title XVI application for SSI, ECF No. 4-2 at 19, claiming disability caused by anxiety disorder, bipolar disorder, post-traumatic stress disorder, right knee injury, and right ankle injury, ECF No. 4-6 at 6. Plaintiff alleged that her disability began on December 31, 2019. *Id.* at 2. Her initial claims were denied on December 23, 2021, ECF No. 4-4 at 5, 10, and denied again upon reconsideration on May 10, 2022, *id.* at 18, 21. On July 8, 2022, Plaintiff filed a request for a hearing before an ALJ. *Id.* at 25.

This request was granted, and a telephonic hearing before an ALJ occurred on July 26, 2023. ECF No. 4-2 at 19, 38. Despite having consented to a telephonic hearing through her counsel on July 20, 2023, ECF No. 4-4 at 85, Plaintiff did not appear for this hearing, ECF No. 4-2 at 19, 40. Because her counsel was present, however, the ALJ chose to continue with the telephonic hearing, accepting the testimony of the VE and allowing Plaintiff's counsel to question the VE and

---

[8] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker." *Callahan*, 786 F. Supp. 2d at 90.

argue on Plaintiff's behalf while leaving the record open for thirty more days. *Id.* at 19, 40–41. Plaintiff did not supplement the record during this extended period. *Id.* at 19.

Having reviewed Plaintiff's work history, the VE testified that Plaintiff had two occupations that qualified as past relevant work: driver helper (DOT # 905.687-010), an exertionally heavy and unskilled (SVP 2[9]) occupation; and housekeeper (DOT # 323.687-010), an exertionally medium and unskilled (SVP 2) occupation. *Id.* at 41–42. The ALJ then provided the VE with a hypothetical question, asking whether these jobs could be performed by a person of Plaintiff's age, education, and work experience, who possessed the following RFC:

> the ability to occasionally lift and carry 50 pounds, could frequently lift and carry 25 pounds, could stand and walk about six hours in an eight-hour work day, could sit about six hours in an eight-hour work day. This person must avoid concentrated and even moderate exposure to fumes, odors, dust, gases, smoke, and things of that nature. This person would be limited to performing simple one-to-four-step routine repetitive tasks in [a low]-stress work environment defined as requiring only occasional decision-making and occasional changes in the work setting where there would only be occasional contact with coworkers and supervisors and no contact with the general public, and which would not require a fast-pace or production quotas such as would customarily be found on an assembly line.

*Id.* at 42. The VE testified that this hypothetical person could not perform any of Plaintiff's past relevant work. *Id.*

The ALJ then asked the VE if that same hypothetical person could perform any other work available in the national economy. *Id.* at 43. The VE answered affirmatively, providing the ALJ with three jobs that the hypothetical individual could perform: dishwasher (DOT # 318.687-010), an exertionally medium and unskilled (SVP 2) occupation; automobile detailer (DOT # 915.687-

---

[9] "SVP" stands for "[s]pecific vocational preparation," a term "used within the DOT to define the time generally required to learn certain skills for particular jobs." *Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at \*13 n.13 (D.D.C. Aug. 21, 2023). An SVP of 1–2 corresponds to unskilled work, 3–4 corresponds to semi-skilled work, and 5–9 corresponds to skilled work. *See id.*

034), an exertionally medium and unskilled (SVP 2) occupation; and agriculture packer (DOT # 920.687-034), an exertionally medium and unskilled (SVP 2) occupation. *Id.*

The ALJ then asked the VE to consider whether the same hypothetical person could perform those three jobs if they required an additional limitation that the individual must have the ability to alternate between sitting and standing every 30 minutes. *Id.* The VE stated that they could not, *id.*, but provided the ALJ with five jobs that this person could perform: laundry folder (DOT # 369.687-018), an exertionally light and unskilled (SVP 2) occupation; laundry sorter (DOT # 361.687-014), an exertionally light and unskilled (SVP 2) occupation; garment packer (DOT # 920.687-018), an exertionally light and unskilled (SVP 1) occupation; mail clerk (DOT # 209.687-026), an exertionally light and unskilled (SVP 2) occupation; and remnant sorter (DOT # 789.687-146), an exertionally light and unskilled (SVP 2) occupation. *Id.* at 44. Plaintiff's counsel chose not to question the VE further. *Id.* at 47.

After the hearing, the ALJ issued a request to show cause allowing Plaintiff to explain why she failed to appear and request a new hearing. ECF No. 4-4 at 93. Plaintiff failed to respond. ECF No. 4-2 at 19.

### C.    The ALJ's Decision

The ALJ issued his decision denying Plaintiff's claims on November 24, 2023, *id.* at 16, which became the final decision of the Commissioner on August 5, 2024, when the Appeals Council denied Plaintiff's request for review, *id.* at 2.

The following summary of the ALJ's decision focuses on information relevant to Plaintiff's arguments for remand, which are based solely upon the ALJ's evaluation of Plaintiff's RFC with respect to Plaintiff's mental impairments and CPP limitations.[10] *See generally* ECF No. 5 at 3–15

---

[10] This Court adheres to the "principle of party presentation," by which courts "rely on the parties to frame the issues for decision" and assume that "the parties know what is best for them, and are responsible for advancing the facts and

(Plaintiff's opening brief); ECF No. 9 at 11 n.3 (the Commissioner recognizing that "Plaintiff argues only that the ALJ erred in assessing his alleged mental limitations"); ECF No. 15 at 1–5 (Plaintiff's reply brief).

### 1.    Substantial Gainful Employment, Severe Impairments, and the Listings

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2019.  ECF No. 4-2 at 22.  At step two, the ALJ found that Plaintiff had three mental impairments that should be classified as "severe" under the regulations:  bipolar disorder, anxiety disorder, and post-traumatic stress disorder.  *Id.*

At step three, the ALJ found that Plaintiff did not have a mental impairment or combination of mental impairments that meets or medically equals the severity of one of the mental impairments of listings 12.04, 12.06, and 12.15.[11]  *Id.* at 23–25.  In making this finding, the ALJ found that the "paragraph B" criteria, which require that the mental impairments result in one extreme limitation or two marked limitations in a broad area of functioning, were not satisfied.  *Id.* at 23–24.

The ALJ determined that Plaintiff had no limitations in understanding, remembering, or applying information, citing objective medical evidence and opinion evidence to find that

---

arguments entitling them to relief*."  Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)).  Because Plaintiff has only raised arguments relating to the ALJ's evaluation of Plaintiff's CPP limitations, the Court agrees with the Defendant's contention that Plaintiff has forfeited any arguments contesting the ALJ's findings on Plaintiff's physical impairments, *see* ECF No. 9 at 11 n.3, as well as any arguments challenging the ALJ's evaluation of Plaintiff's social limitations and the ALJ's analysis at steps three, four, and five of the five-step sequential inquiry.  *See Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("We apply forfeiture to unarticulated [legal and] evidentiary theories not only because judges are not like pigs, hunting for truffles buried in briefs or the record, but also because such a rule ensures fairness to both parties." (alteration in original) (quoting *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 137 (D.C. Cir. 2011)); *Siataga v. Saul*, No. 19-cv-768, 2020 WL 6263926, at *7 n.5 (D.D.C. Aug. 20, 2020) (treating arguments not raised in initial motion or reply as waived).

[11] The ALJ also determined that Plaintiff's physical impairments did not meet or equal any of the listings, either alone or in combination.  ECF No. 4-2 at 22–23.  Specifically, after evaluating the record, the ALJ found that Plaintiff's obesity and status post right medial meniscus tear and chondromalacia, alone or in combination, did not meet listing 1.18, *id.* at 23; that Plaintiff's obesity, right calcaneal enthesopathy, and cavus and equinus deformities of the bilateral feet did not meet listing 1.18, *id.*; and that Plaintiff's asthma did not meet listing 3.03, *id.*  Plaintiff has waived any argument contesting these findings.  *See supra* note 10.

Plaintiff's "education history; performance of skilled work in the past; ability to understand and answer questions in mental exams and at the hearing; and the negative findings of normal thought process, associations, intelligence, fund of knowledge, judgment, and memory do not support any limitations in this area."[12] *Id.* at 24.

The ALJ then found that Plaintiff has moderate limitations in interacting with others, finding that Plaintiff's "relationships; ability to go to public places and participate in activities; and the negative findings of normal speech, behavior, affect, cooperation, communication, and eye contact do not support [such] marked limitations." *Id.*

The ALJ found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, elaborating that her "participation in mental status exams; the ability to initiate and complete activities; and the negative findings of normal impulse control, alertness, attention, concentration, perception, thought content, and orientation do not support marked limitations in this area." *Id.* at 25.  In support of this determination, the ALJ cited her status as a full-time student, *id.* at 24 (citing ECF No. 4-7 at 297), as well as the observations of Dr. Vivienne Gomes, M.D., one of Plaintiff's mental health care providers, who noted Plaintiff's "fair attention," "fair concentration," "perseverating thought process," and "normal orientation, thought content, and associations," *id.* (citing ECF No. 4-7 at 214–88; ECF No. 4-8 at 2–16, 160–377; ECF No. 4-9 at 1–285). The ALJ also considered the findings of Dr. John Miller, Ph.D., who performed a consultative examination of Plaintiff and noted her "coherent and goal-directed thought process without hallucinations or delusions" and "intact attention and concentration." *Id.* (citing ECF No. 4-7 at 298–

---

[12] The ALJ mistakenly states that Plaintiff performed skilled work in the past and that Plaintiff adequately answered questions at the hearing which, as discussed above, Plaintiff did not attend.  Although the Court finds these mistakes were likely not prejudicial, it need not make this determination, as Plaintiff's sole argument focuses on her CPP limitation, and she did not contest the ALJ's analysis during step three.  Therefore, Plaintiff has waived this argument. *See supra* note 10.

302).  The ALJ also considered Dr. Miller's report that Plaintiff "could perform serial seven sub-tractions" and that he "estimated average cognitive functioning."  *Id.* (citing ECF No. 4-7 at 298–302).  Further, the ALJ considered the records of Ms. Brittany Hopkins, C.S.W., Plaintiff's social worker, and her associates, who reported Plaintiff possessed a "normal ability to complete therapy and academic tasks."  *Id.* at 24–25 (citing ECF No. 4-9 at 301–68 and ECF No. 4-10 at 2–38).  Lastly, the ALJ noted that Plaintiff "continued to attend school and maintain good grades."[13]  *Id.* at 25 (citing ECF No. 4-9 at 350, 354).

The ALJ also found that Plaintiff had moderate limitations in adapting and managing her-self, citing the same sources in determining that Plaintiff's "treatment history; the ability to manage personal care, activities, and medical care; the lack of inpatient treatment or decompensation and dependence on others; and the negative findings of normal appearance, hygiene, grooming, mood, insight, calm, and self-care do not support marked limitations in this area."  *Id.*

The ALJ ultimately concluded that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied."  *Id.*

The ALJ also found that Plaintiff's mental impairments did not satisfy the "C criteria" of the applicable listings, which "requires a mental disorder characterized as 'serious and persistent'

---

[13] The specific pages of the administrative record cited by the ALJ to support his finding that Plaintiff "continued to attend school and maintain good grades" do not support this assertion.  *See* ECF No. 4-9 at 350, 354.  Nevertheless, the record is replete with evidence of solid academic performance.  *See id.* at 245, 249, 312, 328, 332, 352; ECF No. 4-10 at 36.  As such, the Court finds this was likely a typographical mistake which cannot be a basis for remand, especially where Plaintiff has not argued the error was prejudicial.  *See, e.g.*, *Todd C. v. Saul*, No. 19-cv-1811, 2021 WL 2651166, *13–14 (S.D. Tex. June 28, 2021) (finding no error where the ALJ incorrectly cited the record because the plaintiff "failed to meet his burden to show that these misstatements would affect his substantial rights" and "an incorrect page number referencing to a physician's opinion would not conceivably result in a different outcome"); *Billy P. v. Kijakazi*, No. 22-cv-113, 2023 WL 6378020, at *6 (S.D. Cal. Sept. 28, 2023) (finding no error where "the ALJ's statement was supported by the record and (at most) the ALJ simply cited the wrong pages" because "[t]hese types of clerical errors are harmless"); *Sizemore v. Colvin*, No. 15-cv-232, 2016 WL 4607866, at *3 (E.D. Ky. Sept. 2, 2016) (finding no error where an ALJ incorrectly cited pages because "the question before the Court is not whether the ALJ cited the wrong page number," but rather "whether substantial evidence supported his determination").

lasting two years with evidence of both medical treatment, mental health therapy, and psychosocial

support; and marginal adjustment with minimal capacity to adapt to changes or demands."  *Id.*

The ALJ found that Plaintiff's treatment history and "ability to care for herself and perform most

activities of daily living when stabilized on medication and counseling" did not demonstrate the

requisite functional deficits.  *Id.*

> 2.    Plaintiff's RFC

The ALJ then formulated Plaintiff's RFC, finding that she retained the ability to:

> perform medium work . . .  except [that Plaintiff] must avoid concentrated and even
> moderate exposure to fumes, odors, dusts, gases, smoke, etc.  She is limited to per-
> forming simple 1–4 step, routine, repetitive tasks in a low stress work environment,
> defined as requiring only occasional decision making and occasional changes in the
> work setting, where there would only be occasional contact with co-workers and
> supervisors, and no contact with the general public, and which would not require a
> fast pace or production quotas such as would customarily be found on an assembly
> line.  She requires the ability to alternate between sitting and standing about every
> 30 minutes.

*Id.* at 26.

In determining Plaintiff's mental impairments, the ALJ followed the two-step process for

the evaluation of symptoms outlined in Social Security Ruling 16-3p.  *Id.* at 26 (citing SSR 16-3p,

2017 WL 5180304 (Oct. 25, 2017)).  At the first step of this process, he determined whether there

is an underlying medically determinable physical or mental impairment that could reasonably be

expected to produce Plaintiff's symptoms.  After evaluating Plaintiff's claimed symptoms, which

consisted of limitations on her ability to "remember, complete tasks, pay attention more than fif-

teen minutes, follow spoken instructions, handle stress, adapt to changes in routine, and react ap-

propriately,"  the ALJ found that Plaintiff's medically determinable impairments could reasonably

be expected to cause these alleged mental symptoms.  *Id.* at 28 (citing ECF No. 4-6 at 18).  The

ALJ then completed step number two of the symptom evaluation process, evaluating the intensity,

persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit

the claimant's work-related activities. The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

Specifically, the ALJ determined that the "objective medical evidence is consistent with moderate limitations [in] concentrating, persisting, or maintaining pace," but "not fully consistent with [Plaintiff's] alleged mental limitations." *Id.* The ALJ noted that Plaintiff had completed high school and one semester of college, *id.*, and that she had reported to Dr. Miller that she was a full-time student during the relevant period, *id.* (citing ECF No. 4-7 at 297). The ALJ also mentioned the observations of Dr. Miller, who found that she had "coherent and goal-directed thought process without hallucinations or delusions" and "intact attention and concentration." *Id.* (citing ECF No. 4-7 at 298–302). During her exam with Dr. Miller, Plaintiff could perform simple calculations and serial seven subtractions, and Plaintiff remembered three out of three objects immediately and two out of three after a delay, as well as five digits forward and four backward. *Id.* (citing ECF No. 4-7 at 298–302). Dr. Miller estimated "average cognitive functioning and fund of information." *Id.* (citing ECF No. 4-7 at 298–302). Additionally, the ALJ pointed to the observations of Dr. Gomes, who noted Plaintiff's "fair attention," "fair concentration," "perseverating thought process," "fair recent and remote memory," "fair language," "fair judgement," and "normal orientation, thought content, and associations" throughout the relevant period. *Id.* (citing ECF No. 4-7 at 214–88; ECF No. 4-8 at 2–16, 160–377; ECF No. 4-9 at 1–285). The ALJ also considered that Ms. Hopkins and her associates "reported normal comprehension of therapy strategies," *id.* (citing ECF No. 4-9 at 301–68; ECF No. 4-10 at 2–38), and that Plaintiff "continued to attend school and maintain good grades" during the alleged disability period,[14] *id.* (citing ECF No. 4-9 at 350, 354).

---

[14] *See supra* note 13.

The ALJ reasoned that "[t]hese negative mental status signs and abilities strongly suggest that [Plaintiff] is still capable of completing simple (one-to-four-step) tasks at a non-production rate pace for a full, standard workday." *Id.*

The ALJ also found that the "objective medical evidence is consistent with moderate limitations in interacting with others and adapting or managing oneself," but "not fully consistent with [Plaintiff's] alleged mental limitations." *Id.*  In coming to this conclusion, the ALJ considered Dr. Gomes's observations of "excessive speech, occasional dysphoric mood, and anxious or depressed affect," as well as her reports of "fair insight and judgement," "normal cooperation and mood," and "normal appearance, dress, and behavior." *Id.* (citing ECF No. 4-7 at 214–88; ECF No. 4-8 at 2–16, 160–377; ECF No. 4-9 at 1–285).  The ALJ also mentioned the findings of Dr. Miller, including his notes of Plaintiff's "unkempt mode of dress and fair grooming," "stammering speech somewhat impacting intelligibility," "normal motor behavior, eye contact, voice quality, expressive and receptive language," "euthymic mood and affect" that was "full range and appropriate," "good insight and judgement," and Plaintiff's reports that she could "take public transportation, interact with a few friends, and get along with her family." *Id.* (citing ECF No. 4-7 at 298–302). The ALJ also cited the records from Ms. Hopkins and her associates, who reported "occasional depressed mood or anxiety" but "frequently noted euthymic mood." *Id.* at 28–29 (citing ECF No. 4-9 at 301–68; ECF No. 4-10 at 2–38).  The ALJ summarized their observations that Plaintiff did not have "any problems with communication or self-care," *id.* at 29 (citing ECF No. 4-9 at 301–68; ECF No. 4-10 at 2–38), that Plaintiff "reported she was able to attend holidays, attend school [and] maintain motivation about schoolwork," *id.* (citing ECF No. 4-9 at 354), that "in early 2022, [Plaintiff] was hired as a concierge and continued to attend classes," *id.* (citing ECF No. 4-9 at 306, 328, 334), and that Plaintiff "reported she was able to manage work, school, and her

appointments," *id.* (citing ECF No. 4-9 at 304). The ALJ found that "[t]hese negative mental status signs and activities strongly suggest that the claimant is still capable of occasional familiar interactions, occasional decisions, and occasional changes." *Id.*

The ALJ also considered other medical evidence. Prior to the alleged onset of disability, Dr. Gomes diagnosed Plaintiff with severe bipolar I disorder with psychotic features, personality disorder, and intellectual disability, *id.* (citing ECF No. 4-7 at 136), but Dr. Gomes later amended those diagnoses to depressed moderate bipolar disorder, post-traumatic stress disorder, and anxiety disorder, prescribing 50mg of Zoloft, *id.* (citing ECF No. 4-7 at 258), before later adding 50mg of sertraline and melatonin, *id.* (citing ECF No. 4-10 at 6). Also prior to the alleged onset of disability, Daniel Edwards, P.A., noted diagnoses of depression and anxiety and prescribed Wellbutrin. *Id.* (citing ECF No. 4-7 at 48). Plaintiff attended telehealth counseling appointments through at least April of 2022. *Id.* (citing ECF No. 4-9 at 301–68; ECF No. 4-10 at 2–38). The ALJ found that Plaintiff's "conservative treatment and ability to maintain most activities while in conservative treatment are inconsistent with disabling mental limitations." *Id.*

The ALJ next considered the medical opinion of Dr. Miller, finding it "somewhat persuasive." *Id.* at 30. Dr. Miller "advised [that Plaintiff] has 'moderate' limitations in interacting with supervisors, coworkers and the public; regulating emotions; controlling her behavior; maintaining her wellbeing, sustaining ordinary routine and attendance at work, and maintaining personal hygiene and attire," that Plaintiff has "mild limitations in understanding, remembering, and applying complex instructions and sustaining concentration at a consistent pace," and that Plaintiff has "no limitations in understanding, remembering, and applying simple directions, using reason to make work decisions, and being aware of hazards." *Id.* (citing ECF No. 4-7 at 299–300). The ALJ found that Dr. Miller's observations during the exam were consistent with those of Dr. Gomes and

that they supported his findings of "residual social and adaptive abilities" and Plaintiff's "continued ability to interact and adapt to some degree." *Id.* (citing ECF No. 4-7 at 298–302). However, the ALJ found that Plaintiff had a "need for additional stress and pace limitations," largely because she still "required counseling throughout the affected period." *Id.* Lastly, the ALJ found that Plaintiff's report that "she was able to attend holidays, obtain a job, attend school, and maintain motivation about schoolwork," *id.* (citing ECF No. 4-9 at 306, 328, 334), to be "consistent with the continued ability to perform simple tasks, interact with familiar people, and sustain simple routine." *Id.*

The ALJ also relied on the prior administrative findings of Drs. Gemma Nachbahr, Ph.D., and Patricia Cott, Ph.D., which were supported by a review of the record, in determining the mental components of Plaintiff's RFC. The ALJ found them to be "partially supported and partially consistent with the evidence" and "somewhat persuasive." *Id.* at 31. They "advised [that Plaintiff] has no limitations in carrying out very short and simple instructions and maintaining a normal workday and week; and can tolerate non-intense interactions with coworkers, supervisors, and the public." *Id.* After discussing their observations, the ALJ found that the prior administrative findings were "somewhat consistent" with the observations of Doctors Miller and Gomes and again noted a "need for additional stress and pace limitations."[15] *Id.*

### 3.    Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ accepted the testimony of the VE that Plaintiff had past relevant work as a driver helper (DOT # 905.687-010), which is heavy, unskilled (SVP 2) work, and as a housekeeper (DOT # 323.687-010), which is medium, unskilled (SVP 2) work. *Id.* The ALJ also

---

[15] The ALJ also evaluated objective medical evidence, other evidence, medical opinions, and prior demonstrative findings to determine the physical aspects of Plaintiff's RFC, ECF No. 4-2 at 26, but Plaintiff has forfeited all arguments with respect to this finding. *See supra* note 10.

accepted the testimony of the VE that an individual of Plaintiff's age, education, and RFC would be unable to perform the responsibilities of these occupations. *Id.* at 32. As such, the ALJ found that Plaintiff could not perform any of her past relevant work. *Id.*

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* The ALJ noted that if Plaintiff's RFC allowed her to perform the full range of medium work, the grids would direct the ALJ to find Plaintiff "not disabled." *Id.* The ALJ then explained that, because of his finding that Plaintiff has moderate CPP limitations, the ALJ relied on the testimony of the VE "[t]o determine the extent to which these limitations erode the unskilled medium occupational base." *Id.* The ALJ then found persuasive the VE's testimony that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of several light, unskilled (SVP 1–2) occupations that exist in significant numbers in the national economy, such as: folder (DOT # 369.687-018), laundry sorter (DOT # 361.687-014), garment packer (DOT # 920.687-018), mail clerk (DOT # 209.687-026), and remnant sorter (DOT # 789.687-146). *Id.* at 32–33.

On that basis, the ALJ concluded that Plaintiff was not disabled from December 31, 2019, through the date of the ALJ's decision. *Id.* at 33.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and a correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v.*

*Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It "requires more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). Ultimately, the substantial evidence standard is a "low bar," *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  *See also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high.").  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. at 3; *see also Butler*, 353 F.3d at 999 (district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").

However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting

*Butler*, 353 F.3d at 999)).  In applying this standard, the Court "must also be mindful of the harm-less-error rule.  Consequently, even if [the court] perceive[s] error," it must "affirm the Commis-sioner's decision unless the error is prejudicial."  *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021) (internal citation omitted).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017).  *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (same) (citing *Chenery*, 332 U.S. at 196).

## III.    DISCUSSION

Plaintiff contends that the ALJ erred in determining Plaintiff's RFC.  More specifically, she argues that the ALJ did not properly account for Plaintiff's CPP limitations within the RFC assessment, either by including adequate additional limitations or by sufficiently explaining how Plaintiff could still sustain work despite her CPP limitations.

The CPP domain "refers to the [claimant's] abilities to focus attention on work activities and stay on-task at a sustained rate."  20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00(E)(3).  In SSA parlance, a "moderate" limitation means that the claimant's "functioning in this area inde-pendently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c).  Though the SSA regulations do not define "fair," as this Court has previously explained, "a moderate limitation" in maintaining CPP, as the ALJ found here, "'nec-essarily establish[es] some deficit in [the claimant's] ability to sustain focused attention and

concentration long enough to permit the timely and appropriate completion of tasks commonly found in work settings.'" *Nsiah v. Saul*, No. 19-cv-42, 2020 WL 12948519, at *14–16 (D.D.C. May 12, 2020) (alterations in original) (quoting *Terri D. v. Berryhill*, No. 17-cv-22, 2018 WL 4688740, at *8 (W.D. Va. Sept. 28, 2018)); *see also Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *14 (D.D.C. June 30, 2022), *report and recommendation adopted*, 2022 WL 3139026 (D.D.C. Aug. 5, 2022).

When formulating a plaintiff's RFC, "an ALJ may be found to have adequately accounted for a plaintiff's moderate CPP limitation either (1) by including additional limitations in the RFC relevant to the CPP domain beyond an unadorned simple, routine, and repetitive tasks (or its equivalent) restriction, or (2) by adequately explaining why, notwithstanding the moderate CPP limitation, the plaintiff's overall limitations do not affect his or her capacity to sustain simple, routine, or unskilled work." *Shea M. v. Kijakazi*, No. 21-cv-2204, 2023 WL 3040602, at *18 (D.D.C. Apr. 21, 2023) (citation modified) (quoting *Terri D.*, 2018 WL 4688740, at *8).

Because the ALJ both included additional CPP limitations in the RFC and adequately explained why Plaintiff can still sustain simple, routine, or unskilled work with those limitations, the undersigned finds that the ALJ's evaluation of Plaintiff's RFC sufficiently accounted for her CPP limitations.

### A.    The ALJ Properly Accounted for Plaintiff's CPP Limitations in Plaintiff's RFC By Including Additional Limitations.

Plaintiff acknowledges that the ALJ included additional limitations, but nevertheless argues that the ALJ erred when he "failed to adequately explain how the inclusion of these additional limitations in the residual functional capacity assessment was consistent with the Plaintiff's moderate limitations in concentration, persistence, or pace." ECF No. 5 at 12.  Because the Court finds

adequate the ALJ's explanation of how these additional limitations were consistent with Plaintiff's moderate limitations, this argument is rejected.

Many ALJs attempt, like the ALJ in part did here, to account for "moderate" CPP limitations by restricting the claimant's RFC to simple, routine, unskilled, and/or repetitive work (or some derivation of those limitations). These attempts to account for moderate CPP limitations have received mixed reviews by federal courts. *Contrast, e.g.*, *Patrice V. v. Saul*, No. 18-cv-2221, 2019 WL 3778771, at *5 (D. Md. Aug. 12, 2019) (finding that limiting the claimant to one to four step routine, repetitive tasks did not, without further explanation, sufficiently address moderate CPP limitations) and *Eichelberger v. Colvin*, No. 16-cv-3299, 2018 WL 2740018, at *2 (D. Md. Apr. 12, 2018) (similar), *with, e.g.*, *Taft W. v. Saul*, No. 19-cv-2781, 2020 WL 7074628, at *4 (D. Md. Dec. 3, 2020) (finding that limiting claimant to one to four step routine, repetitive tasks adequately addressed moderate CPP limitations), *and Stout v. Colvin*, No. 14-cv-2596, 2015 WL 7351503, at *12 (D. Md. Nov. 20, 2015) (similar). This is because an RFC that a claimant "can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016) (finding that, generally, limiting a claimant to "simple, routine, and repetitive tasks" is insufficient to address moderate CPP limitations because "the ability to perform simple tasks differs from the ability to stay on task" (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015))). Stated differently, "someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *see also Johnson v. Saul*, No. 19-cv-3829, 2021 WL 411202, at *5 (D.D.C. Feb. 5, 2021) ("As numerous courts have noted, . . . the problem with finding a moderate CPP limitation by requiring 'simple, routine, and repetitive tasks' is that

such a restriction, without more, does not actually address plaintiff's mental impairments because the difficulty of a task does not necessarily say anything about his ability to concentrate on it.").

Plaintiff's RFC, however, contains several additional CPP limitations beyond a restriction to simple, repetitive tasks. Again, it states in pertinent part that Plaintiff is:

> limited to performing simple 1–4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

ECF No. 4-2 at 26. This RFC contains three distinct limitations in addition to a limitation to simple, routine, repetitive, tasks: a limitation to one-to-four-step tasks, a limitation on the frequency of decision making, and a limitation on the frequency of changes in the work setting.[16] *Id.* For the reasons stated below, the Court finds that together they are sufficient to account for Plaintiff's moderate CPP limitations.

First, the ALJ limited Plaintiff to "simple 1–4 step, routine, repetitive tasks." *Id.* This Court has found that such a limitation is materially different than a limitation to "simple, routine, and repetitive tasks" because the limit on the steps "necessarily narrows the universe of tasks and jobs Plaintiff can perform to a small subset that demand reduced attention and concentration." *Laura A. v. Kijakazi*, No. 21-cv-451, 2022 WL 3644810, at *12 (D.D.C. Aug. 24, 2022); *see also*

---

[16] The RFC also contains a fourth additional limitation: Plaintiff can only perform work that "would not require a fast pace or production quotas such as would customarily be found on an assembly line." ECF No. 4-2 at 26. The adequacy of this particular limitation has been previously considered by courts multiple times, with mixed results. *Contrast, e.g.*, *Shea M.*, 2023 WL 3040602, at *19 (finding this limitation "not materially different . . . from RFC restrictions that this Court has rejected in the past as being insufficient to address a moderate CPP limitation" and "impermissibly vague"), *with Johnson v. Kijakazi*, No. 18-cv-2749, 2022 WL 2452610, at *3 (D.D.C. July 6, 2022) (finding a similar additional limitation acceptable and its meaning "readily discern[able]"). Plaintiff does not raise any argument against the inclusion of this additional limitation in her RFC, and so any such argument waived. *See Maalouf*, 923 F.3d at 1109; *Jones*, 835 F.3d at 83; *Siataga*, 2020 WL 6263926, at *7 n.5; *see also David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *8 n.10 (D.D.C. Aug. 8, 2023) (finding that failure to raise an argument against an additional limitation constituted waiver). This aside, for the reasons described below, the Court finds that, even if the limitation related to assembly-line pace were impermissibly vague, the other three additional restrictions, in combination, are sufficient to account for Plaintiff's moderate CPP limitations.

*Light v. Astrue*, No. 11-cv-618, 2013 WL 1305622, at *13 (E.D. Tenn. Jan. 23, 2013) (distinguish-

ing a limitation on "simple" and "repetitive tasks" from a restriction to simple, repetitive "tasks

with one to four step instructions in a low stress environment"), *report and recommendation

adopted*, 2013 WL 1305621 (E.D. Tenn. Mar. 28, 2013).  After such a limitation is placed on a

claimant, "[i]t is challenging for the Court to comprehend how tasks so limited in complexity

would require levels of concentration exceeding Plaintiff's 'fair' (i.e., 'acceptable') ability to 'in-

dependently, appropriately, [and] effectively' concentrate, persist, and maintain pace 'on a sus-

tained basis.'"  *Laura A.*, 2022 WL 3644810, at *12 (second alteration in original) (quoting 20

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00f(2)(c)).

　　Second, the ALJ provided a limitation on the amount of decision making in which Plaintiff

can engage, restricting her to "only occasional decision making."  ECF No. 4-2 at 26.  Because

"someone who, like Plaintiff, has problems concentrating would become overwhelmed in a work

environment where they were required to make a high volume of decisions on a daily basis," this

Court and others have repeatedly found that limiting a claimant to occasional decision making

contributes to an RFC that adequately accounts for a claimant's CPP limitations.  *Laura A.*, 2022

WL 3644810, at *13; *see, e.g.*,  *Mitchell v. Kijakazi*, No. 19-cv-2560, 2021 WL 5310541, at *5

(D.D.C. Nov. 15, 2021) (finding that a RFC limiting the claimant to, among other things, "occa-

sional decisions" adequately accounted for the claimant's moderate CPP limitations); *Vernon O.

v. Kijakazi*, No. 20-cv-3135, 2021 WL 3566742, at *4 (D. Md. Aug. 12, 2021) (noting that "a

limitation to 'occasional decision-making' accounts for a claimant's moderate difficulties in con-

centration, persistence, and pace" (quoting *Green v. Berrihill*, No. 15-cv-3467, 2017 WL 1048155,

at *8 (D. Md. Mar. 20, 2017))); *Smith v. Colvin*, No. 15-cv-234, 2016 WL 5718241, at *3 (W.D.

Va. Sept. 30, 2016) (finding that limitations including "only occasional decision-making" and

"only occasional changes in setting" sufficiently "account[ed] for [the plaintiff's] moderate limi-
tation in concentration, persistence, and pace").

Third, the ALJ imposed restrictions on Plaintiff's work environment, limiting her to work
where there would only be "occasional changes in the work setting, . . . occasional contact with
co-workers and supervisors, and no contact with the general public." ECF No. 4-2 at 26. This
Court and others have held that a limitation allowing only occasional changes in the work setting
helps to adequately account for moderate CPP limitations, as it eliminates "constant distractions
for an employee who struggles to concentrate and stay on task." *Laura A.*, 2022 WL 3644810, at
*13; *see, e.g.*, *Mitchell*, 2021 WL 5310541, at *5 (finding that a RFC limiting the claimant to,
among other things, "occasional changes in the work setting" adequately accounted for the claim-
ant's moderate CPP limitations); *Hunter v. Berryhill*, No. 17-cv-112, 2018 WL 310138, at *13
(E.D. Va. Jan. 5, 2018) ("By eliminating more than occasional changes in the workplace, and lim-
iting [the p]laintiff to simple, routine tasks with no public interaction and only occasional interac-
tion with supervisors and coworkers, the ALJ also properly accounted for her moderate difficulties
with concentration and persistence."); *Linares v. Colvin*, No. 14-cv-120, 2015 WL 4389533, at *4
(W.D.N.C. July 17, 2015) (concluding that the ALJ "accounted for [the plaintiff's] limitation in
concentration and persistence by restricting her to a stable work environment"); *Hanson v.
Comm'r of Soc. Sec.*, No. 14-cv-561, 2015 WL 1637451, at *5 (S.D. Ohio Apr. 13, 2015) (recom-
mending affirmance of ALJ's decision denying benefits where the ALJ "limited [p]laintiff to work
which involved only simple changes, recognizing that frequent or complex changes in the work
environment would challenge someone who had difficulty maintaining attention and concentra-
tion"), *report and recommendation adopted*, 2015 WL 2085558 (S.D. Ohio May 5, 2015). Addi-
tionally, Plaintiff's RFC also limits her to "only . . . occasional contact with co-workers and

supervisors, and no contact with the general public," thereby lessening even further potential distractions for her in the workplace. *See Hunter*, 2018 WL 310138, at *13; *cf. Shea M.*, 2023 WL 3040602, at *18–19 (finding that a similar limitation on interaction was "related to the CPP domain," but that the RFC in which it was included, which did not include an additional limitation on the number of steps in tasks, was overall insufficient).

Following the previous holdings of this Court and others, the Court finds that the additional limitation on the number of steps in the tasks Plaintiff can perform, in combination with the limitations on the frequency of decision making and on her work environment, were sufficient to account for Plaintiff's moderate CPP limitations. *See Laura A.*, 2022 WL 3644810, at *12–13; *Mitchell*, 2021 WL 5310541, at *5; *Pixley v. Kijakazi*, No. 23-cv-3626, 2024 WL 4019626, at *5–6 (D.D.C. Sept. 3, 2024); *Taft W.*, 2020 WL 7074628, at *3–4; *Berrett v. Saul*, No. 19-cv-801, 2020 WL 4589733, at *4–6 (E.D. Va. July 23, 2020), *report and recommendation adopted*, 2020 WL 4589035 (E.D. Va. Aug. 10, 2020).

In response, Plaintiff argues that despite the inclusion of these additional RFC limitations, the ALJ still erred by failing to properly explain *how* these limitations comport with Plaintiff's moderate CPP limitations. ECF No. 5 at 12. The Court rejects this argument.

Lacking guidance from the D.C. Circuit on this issue, this Court has maintained an ALJ *can* properly account for even fewer CPP limitations than the ALJ proscribed here—such as, for example, restricting the claimant's RFC only to simple, routine and/or repetitive, unskilled tasks—*if* the ALJ "explain[s] how such an RFC is consistent with the claimant's trouble with concentration, persistence, or pace." *Nsiah*, 2020 WL 12948519, at *15 n.4; *see also Demetria R.*, 2022 WL 3142376, at *16 n.16. This Court has stated that an ALJ may "satisfy this requirement" by "point[ing] to facets of [the claimant's] life where [he or] she exhibits sustained focused attention,

or testimony that [he or] she is capable of doing so." *Yamise R. v. Kijakazi*, No. 21-cv-3059, 2023 WL 7074088, at *11 (D.D.C. Oct. 25, 2023). The ALJ must, as always, build an "accurate and logical bridge from the evidence to [his or her] conclusion" and explain why the claimant's ability to perform simple tasks is consistent with an ability to stay on task (i.e., concentrate and/or persist on a task). *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Plaintiff asserts that "the ALJ must also actually 'explain how [an RFC limiting a claimant to simple, routine, and unskilled tasks] is consistent with the claimant's trouble with concentration, persistence, or pace.'" ECF No. 5 at 11 (quoting *Yamise R.*, 2023 WL 7074088, at *11). In the instant case, however, the ALJ explicitly laid out how the additional limitations in Plaintiff's RFC align with Plaintiff's CPP limitations, and did so in a manner consistent with the language in *Yamise R.*, to which Plaintiff points. *See id.* Contrary to Plaintiff's assertion, ECF No. 5 at 12, the ALJ here supported these additional limitations with evidence that Plaintiff is capable of "exhibit[ing] sustained focused attention" despite her moderate CPP limitation. *Yamise R.*, 2023 WL 7074088, at *11. Specifically, the ALJ cited several pieces of evidence that "strongly suggest that the claimant is still capable of completing simple (one-to-four-step) tasks at a non-production rate pace for a full, standard workday," including, *inter alia*, her status as a full-time student, her ability to "maintain good grades," and observations of Doctors Gomes and Miller that indicate Plaintiff has "fair attention" and "fair concentration," and "intact attention and concentration," respectively. ECF No. 4-2 at 28. Likewise, the ALJ cited evidence that "strongly suggest[s] that the claimant is still capable of occasional familiar interactions, occasional decisions, and occasional changes," *id.* at 29, such as Plaintiff's reports that she "can take public transportation, interact with a few friends, and get along with her family," her self-reported ability to simultaneously manage work,

school, and her appointments, and the observations of physicians that include findings of "fair insight and judgment." *Id.* at 28–29.

For these reasons, and because Plaintiff failed to discuss any specific deficiencies of the ALJ's explanation, the Court rejects this argument.

### B. The ALJ Properly Accounted for Plaintiff's CPP Limitations in Plaintiff's RFC By Adequately Explaining How Plaintiff Could Still Sustain Work Despite Her CPP Limitations.

Plaintiff also argues that the ALJ's conclusion that she could sustain simple, routine, or unskilled work for a full, standard workday is not supported by substantial evidence. In support of this argument, Plaintiff does not contest the adequacy of the evidence that the ALJ cited—highlighted above—but rather contends that the ALJ omitted evidence in the record that undermines his conclusion. Because the Court finds that the ALJ's decision was supported by substantial evidence and that the evidence allegedly ignored was either adequately addressed by the ALJ or not strong enough to alter the outcome, the Court rejects this argument.

### 1. The ALJ's Explanation of How Plaintiff Can Sustain Work Is Supported by Substantial Evidence.

As stated above, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency*, 315 F.3d at 365–66 (quoting *FPL Energy Me. Hydro LLC*, 287 F.3d at 1160). Ultimately, the substantial evidence standard is a "low bar," *La. Pub. Serv. Comm'n*, 20 F.4th at 7, and "requires considerable deference to the decision rendered by the ALJ." *Crosson*, 907 F. Supp. at 3.

Plaintiff's mental RFC as formulated by the ALJ is supported by substantial evidence. The ALJ cited several pieces of evidence in the record that are together adequate to support his

conclusion that Plaintiff could sustain simple, routine, or unskilled work, despite her moderate CPP limitations. The ALJ referred to a plethora of evidence in the record supporting this conclusion, including Dr. Gomes's observations of "fair attention" and "fair concentration," ECF No. 4-2 at 28, Dr. Miller's finding of "intact attention and concentration" and "average cognitive functioning," *id.*, Plaintiff's ability to attend school and maintain good grades, *id.*, Plaintiff's reports that she "was able to manage work, school, and her appointments," *id.* at 29, and the conservative nature of treatments prescribed to Plaintiff to address her mental health impairments. *Id.* The ALJ also pointed to the opinion of Dr. Miller, who found mild limitations in understanding, remembering, and applying complex instructions and sustaining concentration at a consistent pace, and no limitations in understanding, remembering, and applying simple directions, using reason to make work decisions, and being aware of hazards. *Id.* at 30. The ALJ, finding Dr. Miller's opinion "somewhat persuasive," *id.*, also cited contradictory evidence—such as Plaintiff's prescribed counseling—to impose *more restrictive* stress and pace limitations than the ones advised by Dr. Miller. *Id.* The ALJ also mentions the prior administrative findings of Drs. Nachbahr and Cott, who found that "the claimant has *no limitations* in carrying out very short and simple instructions and maintaining a normal workday and week; and can tolerate non-intense interactions with coworkers, supervisors, and the public." *Id.* at 31 (emphasis added). Here again, the ALJ cited Plaintiff's required counseling to impose stronger limitations than those recommended by Drs. Nachbahr and Cott. *Id.* Ultimately, the ALJ relied on Plaintiff's own representations to medical professionals, treatment records, a medical opinion supported by a consultative exam, and prior administrative findings to formulate Plaintiff's RFC, and a reasonable mind could certainly accept this evidence as sufficient to support the ALJ's conclusion that Plaintiff can still work with the RFC limitations that the ALJ imposed. *See David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL

5035935, at *8–9 (D.D.C. Aug. 8, 2023); *De Deaux v. Kijakazi*, No. 21-cv-682, 2022 WL

14760678, at *6 (D.D.C. Oct. 25, 2022); *Demetria R.*, 2022 WL 3142376, at *10–13.

> 2.      The ALJ's Omission of Certain Pieces of Evidence Does Not Undermine
>         the Adequacy of His Explanation that Plaintiff Could Still Sustain Work
>         Despite Her CPP Limitations.

In arguing that the ALJ's decision is *not* supported by substantial evidence, Plaintiff high-

lights four categories of evidence allegedly ignored by the ALJ that she alleges demonstrate that

her symptoms are "significantly more extensive" than the ALJ found them, including specific

symptoms of Plaintiff's severe mental impairments, evidence of poor academic performance, evi-

dence of poor job performance, and a statement from the opinion of Dr. Miller.  ECF No. 5 at 12–

15.  Plaintiff contends that the omission of these four categories of evidence indicate that the ALJ's

decision is "not supported by the longitudinal evidence." *Id.* at 14.

In general, "there is 'no rigid requirement that the ALJ specifically refer to every piece of

evidence in his decision.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (citing

*Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)).  Indeed, "an ALJ is obligated to

*consider* all relevant evidence but is not required to *discuss* every piece of evidence submitted,"

*Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 10 (D.D.C. 2024) (emphases added) (citing *Said S. v.

O'Malley*, No. 22-cv-362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024)), and "[a]n ALJ's

failure to cite specific evidence does not indicate that such evidence was not considered in a Social

Security disability case," *Charles v. Astrue*, 854 F. Supp. 2d 22, 30 (D.D.C. 2012).  Ultimately, an

ALJ "is only prohibited 'from ignoring an entire line of evidence that supports a disability find-

ing.'" *Goodman*, 233 F. Supp. 3d at 109 (citing *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir.

2013)).  Additionally, to warrant remand, the omission of evidence must be material to the ALJ's

decision or prejudicial to the plaintiff, as "[r]emand is inappropriate where it 'would be an idle and

useless formality.'"  *Gordon v. Colvin*, No. 15-cv-1028, 2016 WL 6088263, at *15 (D.D.C. Sept.

30, 2016) (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009)), *report and recommendation adopted*, 2016 WL 6088266 (D.D.C. Oct. 18, 2016); *see also Saunders*, 6 F.4th at 4 (describing the harmless-error rule). Each of these rules comport with a guiding principle of Social Security law: an ALJ's decision need not be perfect, so long as it is backed by substantial evidence. *See Butler*, 353 F.3d at 999; *Schreiber v. Colvin*, 519 F. App'x 951, 962 (7th Cir. 2013) ("To be sure, as we have indicated, the ALJ's decision was not perfect. But it was supported by substantial evidence, and we must nevertheless affirm the denial of benefits . . . ."); *Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) (reiterating that an "arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding" when it is inconsequential to the outcome (quoting *McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir.1996))).

Because this Court finds that each category of evidence to which Plaintiff points was already considered, not strong enough to undermine the substantial evidence backing the ALJ's decision, or otherwise immaterial to the outcome, these arguments fail.

> a.    *Specific Symptoms*

Plaintiff argues that the ALJ erred by not including in his evaluation several of her symptoms, namely Dr. Gomes's observations of her "excessive speech,"[17] "labile mood," "racing thoughts," "easy distractibility," "flashbacks, hyperarousal, hypervigilance, and avoidance," as well as Dr. Gomes's and other medical sources' reports of her "excessive worry" and "variable concentration." ECF No. 5 at 12–13. By allegedly omitting these reports from his evaluation, Plaintiff contends, the ALJ "made no attempt to determine how the full picture of [her] mental health disorders impacted her ability to sustain simple, routine, or unskilled work for a full,

---

[17] Plaintiff's assertion that the ALJ did not include Dr. Gomes's reports of excessive speech is incorrect. The ALJ explicitly references this particular symptom four times in his decision. ECF No. 4-2 at 24, 28, 30–31.

standard, workday." *Id.* at 13. This argument fails, as the medical observations of the symptoms listed by Plaintiff, as well as their impact on her ability to sustain simple, routine, or unskilled work, were clearly considered by the ALJ, even if not expressly referenced.

Plaintiff's argument is essentially dependent on the assertion that an ALJ is required to explicitly set forth and analyze each and every one of Plaintiff's symptoms. Plaintiff cites no legal authority for such a proposition, and this Court and others largely reject it. *See, e.g.*, *Mitchell*, 2021 WL 5310541, at *6 (finding that a symptom not explicitly mentioned in the ALJ's decision was still sufficiently considered); *Gay v. Saul*, No. 19-cv-363, 2020 WL 1158727, at *7 (N.D. Ohio Mar. 10, 2020) ("An ALJ must 'consider' all of the available evidence, including a claimant's medical history, but there is no requirement that an ALJ recite every symptom, complaint, or no-tation included in every medical record in the transcript file."); *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("As long as the final decision incorporates all of the claimant's impairments—and here, the ALJ stated she did consider all [] 'subjective symp-toms and complaints'—the fact an ALJ did not specifically state every piece of evidence or every symptom is not an error."); *Briggs v. Astrue*, No. A-08-CA-220-SS, 2009 WL 10710096, at *4 (W.D. Tex. Apr. 20, 2009) ("As courts have explained, the ALJ is not required to cite and discuss each and every symptom or illness claimed by a disability claimant, only to consider the effect of all of her impairments."), *aff'd*, 353 F. App'x 946 (5th Cir. 2009); *Flors v. Massanari*, No. 00-cv-5767, 2002 WL 100631, at *5 (S.D.N.Y. Jan. 25, 2002) ("The ALJ is not required to cite and discuss each and every symptom or illness claimed by a disability claimant, only to consider the effect of all of his impairments."); *cf. Williams v. Callahan*, No. 97-cv-160, 1997 WL 614381, at *3 (D.D.C. Sept. 26, 1997) ("The mere failure to mention each and every  symptom or impairment

of a claimant in a hypothetical question does not imply that the ALJ did not consider those impairments in his final decision.").

In any event, the argument that the ALJ erred by not mentioning these specific symptoms as listed in the medical reports and records fails because, ultimately, "an ALJ has an obligation to 'sufficiently capture[] the essence' of [a] doctor's report but is not obligated to 'repeat [his or] her remarks verbatim.'" *Bryant v. Saul*, No. 16-cv-2196, 2019 WL 6619760, at *8 (D.D.C. Nov. 18, 2019) (first and third alteration in original) (quoting *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 172 (D.D.C. 2017)), *report and recommendation adopted*, 2019 WL 6617757 (D.D.C. Dec. 5, 2019).  This obligation was met here.  The symptoms Plaintiff lists are themselves the bases for the CPP limitations imposed by the ALJ, and therefore must have been considered.  Each of these symptoms stems from Plaintiff's mental health diagnoses—bipolar disorder, anxiety disorder, and post-traumatic stress disorder—which the ALJ found to be the severe impairments that cause Plaintiff's CPP limitations.[18]  ECF No. 4-2 at 22.  As a practical matter, an ALJ could not possibly consider a severe impairment but ignore its underlying symptoms.  It is unclear how an ALJ could, for example, recognize "anxiety disorder" as a severe impairment that contributes to moderate CPP limitations while simultaneously ignoring Plaintiff's "excessive worry[ing]," ECF No. 5 at 13.  Further, the notion that an ALJ could possibly decide to impose moderate CPP limitations and account for them in the RFC while not having considered a claimant's "variable concentration," *id.*, defies logic.

---

[18] Indeed, in addition to being commonly known symptoms of Plaintiff's mental impairments, the DSM-5 relates each of the symptoms Plaintiff mentions to *at least one* of her diagnoses.  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, § 1, Introduction (5th ed., text rev. 2022) ("[M]any symptoms that make up the essential features of a particular disorder may occur, at varying levels of severity, in many other disorders.").  Specifically, Plaintiff's "excessive speech," "labile mood," "racing thoughts," and "easy distractibility," can each be attributed to her diagnosis of bipolar disorder.  *See id.*, § 2, Bipolar and Related Disorders.  Plaintiff's "flashbacks, hyperarousal, hypervigilance, and avoidance," meanwhile, can be explained by her post-traumatic stress disorder diagnosis.  *See id.*, § 2, Trauma- and Stressor-Related Disorders.  Finally, her "excessive worry" and "variable concentration" could be deemed symptoms of her anxiety disorder.  *See id.*, § 2, Anxiety Disorders.

30

Because the ALJ thoroughly addressed each of Plaintiff's mental impairments, the ALJ clearly considered their underlying symptoms. *See Owings v. Colvin*, 133 F. Supp. 3d 985, 999 (M.D. Tenn. 2015) (noting that where alleged symptoms or limitations are "related to" an impairment that has been addressed by the ALJ, "further analysis is not required as those symptoms/limitations are part and parcel to" the consideration of the impairment). The Court declines to remand this case so that the ALJ can simply recite the symptoms already implicitly considered in his decision, as "[r]emand is inappropriate where it 'would be an idle and useless formality.'" *Gordon*, 2016 WL 6088263, at *15 (quoting *Rabbers*, 582 F.3d at 654); *see also Saunders*, 6 F.4th at 4.

### b. Academic Evidence

Plaintiff next argues that the ALJ erred in relying on Plaintiff's school attendance and grades to evaluate Plaintiff's academic performance as it relates to her ability to sustain concentration. Specifically, Plaintiff objects to the ALJ's evaluation on the grounds that the record did not contain certain evidence necessary to evaluate fully Plaintiff's academic performance, that the ALJ did not mention Plaintiff's reports of poor performance in school, and that the ALJ omitted evidence that Plaintiff reported she had dropped out of school on two different occasions. Each of these arguments fails.

Plaintiff first takes issue with the amount of evidence in the record pertaining to her academic endeavors, claiming that "[t]he record is devoid of any evidence of the school the Plaintiff was attending, the program she was enrolled in, the number of classes she attempted, or the number of classes she withdrew from or failed," and implying that this undermines the adequacy of the ALJ's analysis.[19]  ECF No. 5 at 13. The first two assertions—that there is no evidence in the

---

[19] Plaintiff's argument that the record is "devoid" of information regarding her academic performance is less persuasive in light of her failure to appear at the hearing, ECF No. 4-2 at 40, and respond to the ALJ's Request to Show Cause for Failure to Appear, *id.* at 19. *See Goodman*, 233 F. Supp. 3d at 111 ("It is Plaintiff's burden . . . to prove that she is disabled," and thus her burden to provide evidence in support of the limitations for which she advocates); *Angela*

record of the school Plaintiff attended or the program in which she was enrolled—are incorrect.

The record contains numerous references to Plaintiff's enrollment at the Academy of Hope.  *See,*

*e.g.*, ECF No. 4-7 at 240, 256; ECF No. 4-8 at 2, 36, 264.  Additionally, the record reveals that

Plaintiff was enrolled in a "Work Ready Program," ECF No. 4-8 at 36, and was taking Office

Administration classes, ECF No. 4-7 at 246.  The remaining assertions are inconsequential.  It is

well-established that "the burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see, e.g.*,

*Wonzell C. v. O'Malley*, No. 22-cv-3828, 2024 WL 3288070, at \*5 (D.D.C. July 3, 2024) ("[A]

claimant bears the burden of showing that any error in the ALJ's analysis was harmful and that a

more restrictive residual functional capacity should apply.").  Plaintiff has not carried this burden

because she has failed to provide any explanation as to why the specific information she says the

record lacks—concerning the number of classes she attempted and failed—would have impacted

the ALJ's final determination.  *See Teachey v. Colvin*, No. 14-cv-178, 2016 WL 958201, at \*4

(E.D.N.C. Mar. 8, 2016) ("[The] plaintiff has not explained what the missing evidence would have

shown and therefore has failed to demonstrate prejudice from its omission."), *aff'd*, 671 F. App'x

150 (4th Cir. 2016); *Williams v. Astrue*, No. 12-cv-1098, 2016 WL 768469, at \*10 (D. Del. Feb.

26, 2016) (rejecting an argument that remand was necessary because evidence was omitted where

the plaintiff failed "to specify any prejudice suffered from a lack of this evidence" because she

"did not provide the evidence to the ALJ or to the Appeals Council," "never indicated what [it

---

*T. v. Comm'r of Soc. Sec.*, No. 21-cv-06068, 2023 WL 5019598, at \*4 (W.D.N.Y. Aug. 7, 2023) ("[B]ecause [the plaintiff] did not appear at her hearing before the ALJ or show cause why when given the opportunity to do so, her insistence that the ALJ did not properly weigh [evidence] rings hollow." (citation omitted)); *Hamilton v. Astrue*, No. 09-cv-202, 2010 WL 411322, at \*9 (N.D. Ohio Jan. 28, 2010) (finding that an ALJ adequately addressed a line of evidence based on the existing, but sparse, record where the plaintiff did not appear at the hearing to discuss the evidence).  Further, Plaintiff has not raised any arguments that the ALJ failed to meet his obligation to develop the record or that Plaintiff had good cause for failure to appear at the hearing, and so these arguments are forfeited.  *See Maalouf*, 923 F.3d at 1109; *Jones*, 835 F.3d at 83; *Siataga*, 2020 WL 6263926, at \*7 n.5.

was], its significance, or why it was error for the ALJ to proceed without it"); *cf. Caitlin O. v. Kijakazi*, No. 17-cv-1939, 2022 WL 17370231, at *17 (D.D.C. Oct. 27, 2022) (rejecting an argument for remand based on allegedly ignored evidence where the plaintiff "fail[ed] to explain how considering it would have affected the five-step sequential inquiry"), *report and recommendation adopted*, 2023 WL 4744068 (D.D.C. July 25, 2023), *aff'd sub nom. O'Hare v. O'Malley*, No. 23-5186, 2024 WL 4441579 (D.C. Cir. Oct. 8, 2024); *Whittier v. Saul*, No. 19-cv-1521, 2020 WL 6439510, at *6 (C.D. Cal. Aug. 31, 2020) (rejecting argument of inadequate evaluation of the record where the plaintiff "fail[ed] to explain how consideration of the [evidence] would even arguably undermine the ALJ's decision, which . . . is well-supported and more than adequate to be sustained under the deferential standard of review applicable here"), *aff'd sub nom. Whittier v. Kijakazi*, No. 20-56149, 2022 WL 542553 (9th Cir. Feb. 23, 2022).  For this reason, the Court rejects this argument.

Plaintiff also notes that the ALJ did not mention in his decision her reports of occasional poor performance in school, specifically pointing to five omitted reports that she alleges demonstrate her symptoms were worse than depicted by the ALJ:  (1) a report that she "worried that she would be kicked out of her program," ECF No. 5 at 13 (citing ECF No. 4-8 at 165); (2) a report "that she was falling behind in school" *id.* (citing ECF No. 4-8 at 304); (3) a report that she "fell behind a little" in school, ECF No. 4-9 at 302;[20] (4) a report that she was upset because of her "falling off [from school] due to her losing focus," ECF No. 5 at 13 (citing ECF No. 4-9 at 235); and (5) a report "that she flunked two portions of her class because she couldn't focus," *id.* (citing

---

[20] Plaintiff cited ECF No. 4-9 at 300 in her motion, *see* ECF No. 5 at 13, but this page of the administrative record does not contain information relevant to her argument.  The undersigned assumes that this was a clerical error and that the page Plaintiff intended to cite was ECF No. 4-9 at 302, because of its proximity and alignment with her argument.

ECF No. 4-9 at 245).  Because this evidence is not strong enough to undermine the substantial

evidence supporting the ALJ's conclusion, this argument also fails.

Three of the reports cited by Plaintiff also include additional information indicating that

her trouble focusing was primarily caused not by disabling symptoms of her mental impairments,

but by external stressors that would likely also negatively affect the academic performance of

someone *without* Plaintiff's impairments.  The first report to which Plaintiff points, her worry that

"she would be kicked out of her program," *id.*, is immediately followed by a statement that "she

has been struggling with school because she has to worry about her children and their schooling,"

and that she felt "overwhelmed and afraid."  ECF No. 4-8 at 165.  Likewise, following Plaintiff's

second listed report that she was "falling behind in school" is a statement "that it has been hard for

her to manage her time effectively and do what is needed for herself and . . . her children," and

that her children's "needs come first so she has been off track with doing what is required for

school."  *Id.* at 304.  Similarly, the fifth omission to which Plaintiff points—a representation "that

she flunked two portions of her class because she couldn't focus," ECF No. 5 at 13 (citing ECF

No. 4-9 at 245)—is an excerpt from a longer appointment summary, during which Plaintiff claimed

that she "[knew] [the reason she flunked two portions of her class] was because she couldn't focus

due to [the death of] her friend," and where Plaintiff "expressed her other grades were good for

the most part," including a "final grade [of] 89.2 despite her not doing well on those assignments."

ECF No. 4-9 at 245.  Placed back into their original context, the specific instances of poor perfor-

mance cited in these three reports were more likely related to external circumstances that would

hamper any individual's academic performance, and not symptoms of a disabling mental impair-

ment.  *See Stewart v. Berryhill*, No. 17-cv-300, 2018 WL 4714768, at *5 (E.D. Ky. Oct. 1, 2018)

(finding academic performance insufficient to determine disability where the claimant "had poor

34

academic performance but the reason for the poor performance is unclear"); *Richardson v. Comm'r of Soc. Sec. Admin.*, No. 14-cv-1915, 2015 WL 461660, at *15 (D.S.C. Feb. 4, 2015) ("[P]oor school performance may result from many factors and . . . disability is merely one of them . . . ."); *Fisher v. Comm'r of Soc. Sec.*, No. 09-cv-1096, 2011 WL 926865, at *5 (W.D. Mich. Feb. 28, 2011) ("There are numerous possible explanations for a lack of academic success."), *report and recommendation adopted*, 2011 WL 901968 (W.D. Mich. Mar. 15, 2011).  As such, they are not strong enough to impact the outcome here.

Plaintiff's  third and fourth examples, both of which indicate that she was performing poorly with no stated external cause, could be seen as evidence that her symptoms were more severe than considered by the ALJ.  Indeed, it is undeniable that there is record evidence that Plaintiff struggled academically, at times.  However, by not discussing record evidence that indicates she also performed *well*, at times, Plaintiff "does not argue that the ALJ's determination with respect to her RFC is unsupported by substantial evidence," but rather "simply points to evidence [that she contends] support[s] the opposite conclusion."  *Darlene M. v. O'Malley*, No. 20-cv-1817, 2024 WL 2813317, at *16 (D.D.C. June 3, 2024).  In doing so, Plaintiff "'appears to be asking this [C]ourt to conduct a de novo review of the ALJ's decision and reweigh the evidence.'"  *Id.* (alteration in original) (quoting *Jackson ex rel. M.J.J. v. Berryhill*, 249 F. Supp. 3d 141, 147 (D.D.C. 2017)).  Such a request would fall outside of the purview of this Court.  *See Crosson*, 907 F. Supp. at 3; *Butler*, 353 F.3d at 999; *see also Stoker v. Kijakazi*, No. 20-cv-205, 2021 WL 9540461, at *7 n.10 (S.D. Ala. Sept. 2, 2021) ("Although [the plaintiff] has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. . . .  The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence.");

*Lax v. Astrue*, 489 F.3d 1080 (10th Cir. 2007) ("The possibility of drawing two inconsistent con-

clusions from the evidence does not prevent an administrative agency's findings from being sup-

ported by substantial evidence." (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir.

2004))).

 In any event, a few reports of poor performance do not themselves discredit the evidence

relied on by the ALJ indicating that Plaintiff performed adequately overall.  It is not uncommon—

and is perhaps expected—that a student struggle from time to time, especially when the student is

also a parent attempting gainful employment.  Experiencing difficulties under this type of work-

load is not itself indicative of disabling mental impairments, and certainly does not undermine the

substantial evidence supporting the ALJ's decision, especially when these reported struggles are

accompanied by reports of strong academic performance at other times.  ECF No. 4-9 at 245, 249,

312, 328, 332, 352; ECF No. 4-10 at 36; *see also Demetria R.*, 2022 WL 3142376, at *12 ("If an

ALJ may not cherry pick medical records in an attempt to highlight only the 'good days,' then a

claimant cannot cherry pick to only highlight the bad days." (quoting *Miller v. Colvin*, No. 12-cv-

50440, 2015 WL 1915658, at *8 (N.D. Ill. Apr. 27, 2015))).  A finding of "not disabled" does not

require consistently flawless performance.  *See* 42 U.S.C. § 1382c(a)(3)(A).  In other words, the

fact that a claimant like Plaintiff, who juggles multiple demanding roles, falters from time to time

does not itself provide evidence of disabling mental impairments, because many—if not most—

people would experience struggles if placed in the same position.  *See Keys v. Barnhart*, 347 F.3d

990, 994 (7th Cir. 2003) (finding a denial of disability benefits reasonable where a student with a

"marked" CPP limitation was "able to function more or less adequately in school, so that if he

were deemed disabled so would millions of other children be").

Plaintiff also points out that the ALJ omitted from his decision evidence that she dropped out of school in June 2020 and October 2021, arguing that this indicates her symptoms were worse than the ALJ found. Because this evidence is also not necessarily indicative of disabling mental impairments and does not undermine the substantial evidence supporting the ALJ's final decision when viewed in context, this argument also fails.

No doubt, Plaintiff having dropped out of school in October 2021 could, on its face, serve as evidence that she struggled with school. ECF No. 5 at 13 (citing ECF No. 4-9 at 198). This event, however, occurred around the same time as the death of Plaintiff's friend, as the Commissioner notes. ECF No. 9 at 26. The very medical records that Plaintiff cites, which are notes from an October 23, 2021, appointment from her social worker, state that:

> [Plaintiff] identified since the loss of her friend she has been emotionally distraught. [Plaintiff] expressed she dropped out of school and she isn't as focused. [Plaintiff] expressed she is no longer focused and she isn't like herself. [Plaintiff] admitted she knows her friend would be so disappointed in herself. [Plaintiff] admitted she has to find her way back.

ECF No. 4-9 at 198. The context in which this information is conveyed in her medical records indicates that the death of a friend, and the impact it had on Plaintiff's ability to focus, were the primary motivations for her dropping out of school. While the Court sympathizes with Plaintiff, many people, students included, commonly take breaks from their responsibilities so that they may mourn the losses of their loved ones. Additionally, thirteen days after this visit, Plaintiff participated in another session with her social worker, where she reported that "she took the initiative and she signed up for school again," that she would "be back starting in their December session," and that she was "excited." *Id.* at 178. This further indicates that her decision to drop out of school in October 2021 was motivated by grief, not disability, undermining the strength of this particular piece of evidence. *See Daniel M. v. Saul*, No. 18-cv-3296, 2020 WL 1816380, at *1 (D. Minn. Jan. 21, 2020) (finding that the fact a claimant re-enrolled after dropping out of school weighs

against a finding of disability); *Osborne v. Astrue*, No. 11-cv-17, 2012 WL 2053764, at \*9 n.8 (W.D. Va. May 22, 2012) (finding that the fact that the claimant dropped out of school for reasons besides academic failure supported ALJ's finding of nondisability), *report and recommendation adopted sub nom. Osborne v. Comm'r of Soc. Sec.*, 2012 WL 2131547 (W.D. Va. June 12, 2012).

The same analysis applies to Plaintiff's June 2020 withdrawal from school. When Plaintiff reported her withdrawal to Ms. Hopkins, she elaborated that "she needs to put her focus into her housing and her children at this time," and also "identified that she will be enrolling back into her school program during the next session and when things reopen." ECF No. 4-8 at 295. Plaintiff was working, enrolled as a full-time student, and taking care of two minor children. As stated above, experiencing struggles while undertaking such a Herculean effort—and commendably deciding to prioritize one's children—is not evidence of disabling mental impairments strong enough to undermine the substantial evidence backing the ALJ's decision.

For these reasons, the omitted evidence concerning Plaintiff's academic performance does not undermine the substantial evidence supporting the ALJ's conclusion and would not have altered the outcome.

### c.  Occupational Evidence

Plaintiff also asserts that the ALJ erred by finding that her employment during the alleged period of disability demonstrated ability to work, while allegedly ignoring the brevity of this employment. ECF No. 5 at 14. Plaintiff contends that what this evidence actually indicates is "that the Plaintiff had attempted two jobs, and had failed at each in a very short time." ECF No. 15 at 2. This argument also fails.

Courts have expressed conflicting viewpoints on the significance of a claimant being employed, or attempting to obtain employment, while allegedly disabled. *Contrast, e.g., Wilder v.*

*Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) ("[E]mployment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job."); *Morrison v. Astrue*, 906 F. Supp. 2d 839, 863 (N.D. Iowa 2012) ("[S]ymptom-free periods are characteristic of mental impairments and the ability to work during these periods does not necessarily undermine the severity of those impairments."); *Fulwood v. Heckler*, 594 F. Supp. 540, 543 (D.D.C. 1984) ("That a claimant has recently sought work is immaterial to a determination of whether he qualifies for disability benefits."), *with, e.g.*, *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (finding the fact that the claimant "continued to seek work after her alleged disability onset date" supportive of a finding of nondisability); *Russo v. Comm'r of Soc. Sec.*, No. 12-cv-10722, 2013 WL 1326480, at *7 (E.D. Mich. Mar. 31, 2013) ("[The claimant's] acknowledgment that he was looking for work stands at odds with his professed belief that he is disabled." (citing record)).  Courts have also found that the reason a Social Security claimant *stops* working can be relevant to a disability determination.  *See, e.g.*, *Thigpen v. Colvin*, 208 F. Supp. 3d 129, 140 (D.D.C. 2016) (finding the fact that the plaintiff stopped working for reasons other than disability a valid explanation for finding the record inconsistent with disabling conditions).

There is minimal evidence in the record that provides context for Plaintiff seeking, obtaining, and ceasing employment in 2022.[21]  There are many reasons that a person, especially one with as many obligations as Plaintiff, might seek or leave a job.  Thus, her arguments that the brevity of her employment during this period demonstrates that she "failed" at these jobs, ECF No. 15 at 2, and that her symptoms were more intense than recognized by the ALJ, ECF No. 5 at 14–15, fail

---

[21] Prior to her interview for the concierge position, Plaintiff reported to Ms. Hopkins that "she [was] hoping [the interview] will go well and put some money in her pocket."  ECF No. 4-9 at 334.  Because financial considerations are a common reason for seeking and obtaining employment, the Court does not find this piece of evidence particularly helpful to determining the value of employment-related evidence in this case.

because Plaintiff offers no evidence to support either of these interpretations of the record. Without additional information in the record to help the Court understand why Plaintiff obtained work during this time period—and why she left these roles so quickly—it is impossible to determine exactly how her employment should impact her RFC.[22] *Cf. Caitlin O.*, 2022 WL 17370231, at *17 (rejecting an argument for remand based on allegedly ignored evidence where the plaintiff "fail[ed] to explain how considering it would have affected the five-step sequential inquiry").

Nonetheless, the ALJ's omission of the brevity of Plaintiff's employment during this time is ultimately inconsequential. As stated above, the fact that Plaintiff's 2022 employment was brief is far from dispositive, as is the piece of evidence relied on by the ALJ that this fact potentially undermines—that Plaintiff *did* obtain employment. The ALJ largely relied on other evidence to determine that Plaintiff could still sustain work with the limitations included in the RFC, such as Dr. Gomes's observations of "fair attention" and "fair concentration," ECF No. 4-2 at 28, Dr. Miller's finding of "intact attention and concentration" and "average cognitive functioning," *id.*, Plaintiff's school attendance and academic performance, *id.*, and the conservative nature of the treatments Plaintiff received, *id.* Thus, this Court finds that even if the evidence regarding Plaintiff's employment during the alleged period of disability was entirely discarded or viewed as evidence toward a finding of disability, the ALJ's decision would still be supported by substantial evidence.

---

[22] Here, too, Plaintiff's failure to appear at the hearing, ECF No. 4-2 at 19, 40, and respond to the ALJ's Request to Show Cause for Failure to Appear, *id.* at 19, bears some responsibility for the ambiguity in the record concerning her employment. *See Goodman*, 233 F. Supp. 3d at 111; *Angela T.*, 2023 WL 5019598, at *4; *Hamilton*, 2010 WL 411322, at *9. Again, however, Plaintiff failed to raise any argument that the ALJ failed to develop the record, and has thus waived it. *See supra* note 19.

As such, the omission of this evidence would be a harmless error and does not warrant remand. *See Gordon*, 2016 WL 6088263, at *15 ("Remand is inappropriate where it 'would be an idle and useless formality.'" (quoting *Rabbers*, 582 F.3d at 654)); *see also Saunders*, 6 F.4th at 4.

    *d.*    Dr. Miller's Statement

Plaintiff also complains that the ALJ did not address a statement in Dr. Miller's opinion that "the results of the evaluation [of Plaintiff] appear to be consistent with psychiatric and substance abuse problems and this may significantly interfere with [her] ability to function on a daily basis." ECF No. 5 at 15 (emphasis omitted) (citing ECF No. 4-7 at 300). This omission does not warrant reversal either.

While it is true that the ALJ did not address this statement from Dr. Miller's opinion, it would not serve as evidence supporting a finding of disability when considered in its context. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984) ("In evaluating . . . the medical evidence . . . we are obliged to read that evidence in its totality, rather than to take bits and snatches of it out of context . . . ."). Just above this statement, Dr. Miller opines that:

> [Plaintiff's] ability to interact adequately with supervisors, coworkers, and the public, regulate emotions, control behavior, and maintain well being, sustain an ordinary routine and regular attendance at work, and maintain personal hygiene and appropriate attire is *moderately limited*. Her ability to understand, remember, or apply complex directions or instructions and sustain concentration and perform a task at a consistent pace is *mildly limited*. The claimant displays *no evidence of limitation* in ability to understand, remember, and apply simple directions and instructions, use reason and judgment to make work-related decisions, or to be aware of normal hazards and take appropriate precautions.

ECF No. 4-7 at 299–300 (emphases added). Dr. Miller's report also contains findings that Plaintiff's thought process was "[c]oherent and goal directed," that her attention and concentration was "[i]ntact," and that her insight and judgment were "[g]ood." *Id.* at 298–299.

The opinion that Plaintiff's CPP limitations "may significantly interfere with [Plaintiff's] ability to function on a daily basis" must be understood in the context of the findings and

limitations that precede it. *See id.* at 298–300. Indeed, without more, Dr. Miller's "general, con-

clusory statement . . . does not implicate any limitations greater than the more specific limitations"

discussed in his report. *See Theresa M. C. v. Comm'r of Soc. Sec.*, No. 21-cv-1005, 2024 WL

1174369, at *6 (W.D.N.Y. Mar. 19, 2024) (addressing a virtually identical statement in a consul-

tative examiner's opinion). More, any assertion that the omission of Dr. Miller's statement preju-

diced Plaintiff necessarily fails, because the CPP limitations imposed by the ALJ are *more restric-

tive* than those proposed by Dr. Miller. *Contrast* ECF No. 4-2 at 28 (finding "moderate" limitations

on "concentrating, persisting, and maintaining pace"), *with* ECF No. 4-7 at 299 (finding Plaintiff's

ability to "sustain concentration and perform a task at a consistent pace is mildly limited"); *see

also Lisa Marie S. v. Comm'r of Soc. Sec.*, No. 20-cv-975, 2022 WL 137867, at *10 (N.D.N.Y.

Jan. 14, 2022) (finding no error where an ALJ omitted a virtually identical statement because "the

ALJ's RFC determination reflects most of [the physician's] opined limitations"). Thus, failing to

discuss this particular statement does not undermine the ALJ's overall decision with respect to

Plaintiff's CPP limitations, which is otherwise supported by substantial evidence.[23]

---

[23] Omissions of the specific language in the statement to which Plaintiff points have received a wide range of responses from courts. *Contrast, e.g., Davis v. Comm'r of Soc. Sec.*, No. 18-cv-6519, 2020 WL 1983916, at *6 (W.D.N.Y. Apr. 27, 2020) (rejecting a claimant's argument that "remand is warranted solely [because] the ALJ did not wholly adopt" an identical statement), *and Woods v. Comm'r of Soc. Sec.*, No. 16-cv-01657, 2017 WL 2815075, at *10 (D.N.J. June 29, 2017) (finding that the omission of a virtually identical statement was not an error where it was contradicted by other evidence in the same physician's report), *and Daniel G. v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-1255, 2020 WL 529886, at *3 (N.D.N.Y. Feb. 3, 2020) (finding that the omission of a virtually identical statement did not warrant remand because it was "a dispositive opinion reserved for the ALJ"), *with, e.g., Brett P. v. Comm'r of Soc. Sec.*, No. 18-cv-1395, 2020 WL 95720, at *10 n.1 (N.D.N.Y. Jan. 8, 2020) (finding that an ALJ erred by failing to mention a virtually identical statement), *and Krystalie M.P. v. Comm'r of Soc. Sec.*, No. 21-cv-7902, 2022 WL 10375138, at *7 (S.D.N.Y. Oct. 18, 2022) (recognizing the omission of a virtually identical statement as an "important issue[] on a matter material to the disability determination [that] requires remand"), *and Leitman v. Berryhill*, No. 17-cv-466, 2018 WL 2306491, at *5 (M.D. Fla. May 1, 2018) (remanding where "[t]he ALJ did not explicitly address" a virtually identical statement and it was "unclear how this general statement from [the opinion] relates to the specific opinions that the ALJ did address"), *report and recommendation adopted sub nom. Leitman v. Comm'r of Soc. Sec.*, 2018 WL 2298677 (M.D. Fla. May 21, 2018).

This Court took issue with an ALJ's omission of identical language in *Yamise R.*, 2023 WL 7074088, at *11, but *Yamise R.* should not be read to stand for the proposition that the omission of this language *automatically* warrants a remand. There, this Court considered the omission of this statement only to the extent that it indicated the harmful nature of the ALJ's failure to explain how the plaintiff could sustain simple, routine, or unskilled work, which had already been established on different grounds. *Id.* Here, there is substantial evidence to conclude that Plaintiff can

C.    **Even if the ALJ Had Not Adequately Accounted for Plaintiff's CPP Limitations in Plaintiff's RFC, the Error Would Be Harmless.**

This Court also finds that even if Plaintiff had demonstrated that the ALJ failed to adequately account for Plaintiff's CPP limitations in Plaintiff's RFC, the error would be harmless, and thus would not require remand.

An ALJ's failure to adequately account for a claimant's CPP limitations is usually considered harmless if "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly accounted for a claimant's limitations in concentration, persistence, and pace.'" *Petty*, 204 F. Supp. 3d at 206  (citation modified) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir.2014)).

Any such alleged error here would be harmless under the first prong of *Petty*.  There are numerous pieces of evidence that demonstrate Plaintiff can engage in simple, routine tasks or unskilled work despite her CPP limitations, including Dr. Gomes's numerous and consistent observations that Plaintiff has a fair attention span and fair concentration, *see, e.g.*, ECF No. 4-7 at 225, 229, 234, 268, 278, 281, 286, Dr. Miller's finding of "intact attention and concentration" and "average cognitive functioning," ECF No. 4-2 at 28 (citing ECF No. 4-7 at 299), Plaintiff's repeated

---

sustain such work, *see* discussion *supra* Section III.B.1, and therefore there was no error, harmless or otherwise. Further, the omission of this particular statement in *Yamise R.*, when put in the context of the consultative examiner's report there, was more problematic than its omission here, as the remainder of that medical opinion contained stronger findings of impairment and a more restrictive CPP limitation than Dr. Miller's opinion.  *Contrast* Administrative Record, *Yamise R. v. Kijakazi*, No. 21-cv-3059, (D.D.C. May 26, 2022), ECF No. 14-9 at 58–62 (finding that claimant had a "moderate limitation" in her ability to "sustain concentration and perform a task at a consistent pace," that her "attention and concentration" was "mildly impaired due to limited intellectual functioning and possibly anxiety," and that she "was likely functioning in the below average range of intelligence"), *with* ECF No. 4-7 at 297–300 (finding that Plaintiff was "mildly limited" in her ability to "sustain concentration and perform a task at a consistent pace," that her "attention and concentration" was "intact," and that her cognitive functioning was "average"); *see also Theresa M. C.*, 2024 WL 1174369, at *6 (finding that this statement should be viewed in context of the surrounding limitations and impairments).

representations that she was able to attend school and perform adequately, *see* ECF No. 4-9 at 245, 249, 312, 328, 332, 352; ECF No. 4-10 at 36, and the conservative nature of Plaintiff's treatments, *see* ECF No. 4-7 at 48, 258; ECF No. 4-9 at 301–68; ECF No. 4-10 at 2–38).  Further, the ALJ's hypothetical to the VE was limited to include only unskilled work, even if it was not explicit. Plaintiff's past relevant work was exclusively unskilled, ECF No. 4-2 at 41–42, meaning that Plaintiff had no transferable skills, *id.* at 32 (citing 20 C.F.R. §§ 404.1568, 416.968), and the ALJ's hypotheticals asked the VE to consider someone with the same work experience as Plaintiff, *id.* at 42.  Additionally, each job the VE testified Plaintiff could still perform—Folder (DOT # 369.687-018), Laundry sorter (DOT # 361.687-014), Garment packer (DOT # 920.687-018), Mail clerk (DOT # 209.687-026), and Remnant sorter (DOT # 789.687-146)—is categorized as unskilled.  *Id.* at 32–33, 43–44.  This Court has repeatedly found that a hypothetical is sufficiently limited to unskilled work where all jobs provided by the VE in response to the hypothetical are unskilled. *See Pixley*, 2024 WL 4019626, at \*7; *Lisa H. v. Kijakazi*, No. 20-cv-3322, 2023 WL 7156518, at \*10 (D.D.C. Oct. 31, 2023); *Glass v. Saul*, No. 19-cv-1804, 2021 WL 1405726, at \*6 (D.D.C. Apr. 14, 2021) *aff'd sub nom. Glass v. Kijakazi*, No. 21-5141, 2022 WL 566488 (D.C. Cir. Feb. 23, 2022).  This is because "[e]ven if this case were remanded on the grounds that the ALJ himself did not limit the hypothetical to 'unskilled' jobs, the vocational expert would provide the same answers, based on which the ALJ would reach the same result," meaning remand "would be a useless formality and inappropriate."  *Lisa H.*, 2023 WL 7156518, at \*10.

For these reasons, even if the ALJ had improperly accounted for the Plaintiff's CPP limitations in Plaintiff's RFC, the error would be harmless.[24]

---

[24] The hypothetical provided to the VE proposed an individual with an RFC identical to Plaintiff's, and nothing more. *Compare* ECF No. 4-2 at 42–43, *with id.* at 26.  Thus, since the Court must assume *arguendo* that Plaintiff's RFC did not properly account for Plaintiff's CPP limitations to conduct the harmless-error analysis, the second prong of *Petty* necessarily cannot be satisfied.  *See Petty*, 204 F. Supp. 3d at 206.

### IV.    CONCLUSION

For the foregoing reasons, an order reflecting that Plaintiff's motion for judgment of rever-

sal, ECF No. 5, is **DENIED** and Defendant's motion for judgment of affirmance, ECF No. 9, is

**GRANTED** will be issued.


Date: August 7, 2025                                    _____

                                                        G. MICHAEL HARVEY
                                                        UNITED STATES MAGISTRATE JUDGE